# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **DONNA GAGLIARDI,** | **Case No. 21–cv–20338–ESK–SAK** |
| **Plaintiff,** | |
| **v.** | **OPINION** |
| **COMPASS ONE HEALTHCARE,** *et al.*, | |
| **Defendants.** | |

**KIEL, U.S.D.J.**

**THIS MATTER** is before the Court on defendants' motion for summary judgment (Motion or Mot.).  (ECF No. 57.)  For the following reasons, the Motion will be **GRANTED**.

## BACKGROUND

### I.  PROCEDURAL HISTORY

Plaintiff Donna Gagliardi filed a charge of discrimination in October 2020 with the United States Equal Employment Opportunity Commission (EEOC). (ECF No. 1–1.)   The charge identified the Philadelphia Commission on Human Relations as the local agency with overlapping jurisdiction.  (*Id.*)  Gagliardi alleged that defendants Compass One Healthcare (Compass One), Morrison Healthcare, LLC (Morrison), and Compass Group USA, Inc. (Compass Group), committed unlawful age discrimination when they failed to hire her for various positions.  (*Id.*)  On November 18, 2021, the EEOC informed Gagliardi that it was closing her case and issued her a Notice of Right to Sue.  (ECF No. 1–2.)

On December 3, 2021, Gagliardi filed her complaint in this matter, which reiterated her allegations in the charge before the EEOC.  (ECF No. 1.) Plaintiff asserts claims against defendants for violation of: (1) the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq*.; (2) the New

Jersey Law Against Discrimination (NJLAD), N.J. Stat. Ann. §10:5-1 *et seq*.; and (3) the Philadelphia Fair Practices Ordinance, Phila. Code §9-1101 *et seq*. Defendants filed an answer on March 22, 2022.   (ECF No. 9.)

After the parties completed discovery, defendants filed the present Motion on September 11, 2023, along with a corresponding brief.   (ECF No. 57-2, Def.'s Br.)   Defendants attached to the Motion numerous exhibits and, in compliance with Local Civil Rule 56.1, a Statement of Undisputed Material Facts.   (ECF No. 57-3, Def.'s SUMF.)   Gagliardi opposed the Motion on October 23, 2023 (ECF No. 59, Opp'n Br.), disputed portions of defendants' Statement of Undisputed Material Facts (ECF No. 59-1), and submitted a Statement of Disputed Material Facts Precluding Summary Judgment.   (ECF No. 59-2, Pl.'s SDMF.)   Gagliardi also submitted numerous exhibits in support of her opposition.   (ECF No. 60.)   Defendants replied on October 30, 2023 (ECF No. 61, Reply Br.) and separately responded to Gagliardi's Statement of Disputed Material Facts Precluding Summary Judgment.   (ECF No. 62.)

## II.   FACTS[1]

On September 17, 2019, Gagliardi learned she was being terminated from her position as Director of Food and Nutrition at Inspira Health Network (Inspira).   (Pl.'s SDMF ¶28.)   She had worked for the company and its predecessor entities for 39 years and since shortly after graduating from Camden County College with an associate degree in applied sciences in 1980.   (*Id*. ¶¶2, 28.)   She was 59 years old.   (*Id*. ¶1.)

Gagliardi's termination came about two years after Inspira contracted with defendant Morrison to run the food and nutrition operations at the locations that Gagliardi oversaw.   (*Id*. ¶¶12–15.)   Morrison is the foodservice

---

[1] The following facts are taken from defendants' Statement of Undisputed Material Facts and plaintiff's Statement of Disputed Material Facts Precluding Summary Judgment.   The parties agree on the facts, unless otherwise indicated.

division of Compass One, which is a subsidiary of Compass Group.   (Def's SUMF ¶¶ 1–4).

All management personnel of Inspira's food operations was transferred to Morrison with the exception of Gagliardi, who continued her work in food services but as an employee of Inspira.   (Pl.'s SDMF ¶ 15.)   Steven Blair, Morrison's Regional Director of Operations, would later describe the situation as "stressful" because although he oversaw food services as part of the contract with Inspira, Gagliardi was not his direct report.   (*Id.* ¶¶ 17, 18.)   This led to a strained working relationship when, according to Blair, Gagliardi resisted adopting Morrison's policies and procedures and undermined Blair's authority with his employees.   (*Id.* ¶¶ 22, 23.)   In his deposition as part of this case, Blair testified that he did not recall whether he liked Gagliardi personally but said that she was not a good leader and lacked business acumen and professionalism.   (*Id.* ¶¶ 24, 27.)   Eventually, Blair asked Joe Alessandrini, the vice president at Inspira overseeing Gagliardi, to fire her, which Alessandrini did.   (*Id.* ¶ 30.)

Gagliardi believed that despite her termination, she could be hired for another role with defendants.   She testified that on her way out the door, Alessandrini told her that Blair had indicated that he had another job for her.   (*Id.* ¶ 29.)   Blair denied this during his deposition.   "I did not say at any time that I had a position for [Gaglardi]," he said.   (*Id.* ¶ 31.)   "I would never say that I have a position for anyone because we have to go through the proper hiring process."   (*Id.*)   He added: "I'll be very clear.   If I recommend the removal of an individual from one of my accounts, I would not rehire them at another location.   That would be counterproductive to not only me, but to my entire leadership team."   (*Id.* ¶ 32.)

In the two years following her termination from Inspira, Gagliardi applied for 25 different positions with defendants.   (*Id.* ¶ 39.)   She was not hired for

any of them.   (*Id.*)   She seeks recovery for ten of the positions.   (Opp'n Br. p. 4.)[2]   Gagliardi asserts that she was not hired for any of the ten positions because of her age.   (*Id.* p. 2.)

She was 60 or 61 years old at the time of each application.   (*See, e.g.*, Pl.'s SDMF ¶¶ 41, 229.)   The candidates hired for the positions that Gagliardi applied for ranged in age from 25 to 56.   (*See generally id.* ¶¶ 40–244.)   For each position to which she applied, Gagliardi used an online portal to submit her resume, which showed that she earned her degree in 1980 and had been in the workforce since 1981.   (*Id.* ¶¶ 36, 37, 42.)   Gagliardi testified at her deposition:

> Q. Other than what you've already told me, do you have any evidence or basis to claim that anyone at Compass treated you differently because of your age?
>
> A. All the applications that I completed and I didn't hear anything back.   Why, somebody with my experience, why would they not call me?   I don't know.   So the only conclusion I could come to is it was my age.
>
> Q. So it's your belief that you were treated differently because of your age, correct?
>
> A. Correct.
>
> Q. And you base your belief on the fact that no one contacted you about any of the positions you applied for until Ms. Lepore, correct?
>
> A. Correct.
>
> Q. And you believed you were qualified for all the positions that you applied to, correct?
>
> A. Correct.

---

[2] All citations to specific pages of court documents use the page numbers generated automatically by the ECF system.

> Q. And you believe that you had 39 years of experience, correct?
>
> A. Correct.
>
> Q. Other than those bases, is there any other basis that you have for believing that anyone at Compass treated you differently because of your age?
>
> A. I would say I have facts as far as the folks that went into Inspira. . . .
>
> Q. So do you have any personal knowledge about anyone who got any job at Inspira other than, well, do you have any personal knowledge, so knowledge not from somebody else?
>
> A. No.
>
> Q. Do you have any other evidence other than what you've told me to support your assertion that you were discriminated against or that you were treated differently by Compass because of your age?
>
> A. No.

(Def.'s SUMF ¶ 189 (quoting Mot., Ex. C, Gagliardi Dep. 240:8–242:8).)

Hiring for each position to which Gagliardi applied involved collaboration between a recruiter and a hiring manager. (*See, e.g.*, Pl.'s SDMF ¶ 43.) The recruiters took the initial look at applications and decided whether to pass them on to the hiring managers, who made the final decision whether to extend an offer of employment. (*See, e.g.*, *id*. ¶¶ 45, 51, 63.) Four different recruiters and seven hiring managers—including Blair for three of the roles—oversaw the hiring for the ten positions to which Gagliardi applied. (*See generally id*. ¶¶ 40–244.)

Defendants deny that they rejected Gagliardi on account of her age. Each of the four recruiters testified in depositions that while they were intellectually capable of estimating a candidate's age based on the dates of education and

employment in her resume, they did not do so in the case of Gagliardi. (*Id.* ¶¶ 49, 50, 72, 113, 115, 130, 153, 176, 199, 236.) Instead, the recruiters and defendants provided one or more non-age-related reasons why they did not hire Gagliardi for each position. First, defendants preferred hiring internal candidates who were already working for a Compass Group entity like Morrison. (Def.'s SUMF ¶ 4.)[3] Second, defendants gave preference to candidates referred by a client. (Pl.'s SDMF ¶¶ 163, 168, 169.) Third, defendants claim that the candidates they hired for several positions were better qualified than Gagliardi. (*Id.* ¶¶ 54, 83, 105, 123, 146, 168, 209.) Finally, for positions where Blair was the hiring manager, he testified that he "wouldn't consider [Gagliardi] for a position in [his] portfolio after [their] experience at Inspira." (*Id.* ¶ 158.)

The following tables provide a summary of the positions for which Gagliardi applied, who was responsible for the hiring, details about the candidate who was hired instead of her, and the defendants' reasons for rejecting Gagliardi.

---

[3] Gagliardi admits this is defendants' preference. (ECF No. 59-1 ¶ 4.)

*Gagliardi's Job Applications*[4]

| | Title | Location | Req. ID | Date Applied | Date Rejected | Recruiter | Hiring Manager | Cand. Hired | Cand. Age | Date Applied | Def.'s Proffered Reason |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1) | Food and Nutrition Director | Elmer, NJ | 322301 | 11/8/19 | Unspecified | Stewart | Hymerling | D.F. | 37 | 12/30/19 | Candidate better qualified |
| 2) | Patient Experience Manager | Marlton, NJ | 339550 | 11/8/19 | Unspecified | Stewart | Williams | K.S. | 51 | 12/1/19 | Candidate better qualified |
| 3) | Retail Manager | Mullica Hill, NJ | 364623 | 2/11/20 | 3/27/20 | Stewart, Lepore | Bowers | K.M. | 25 | 1/14/20 | Candidate better qualified |
| 4) | Patient Services Manager | Philadelphia, PA | 378594 | 2/18/20 | 3/13/20 | Graham | Heaton | K.J. | 42 | 2/23/20 | Candidate better qualified |
| 5) | Regional Manager, Patient Services | Northeast Region | 371556 | 2/26/20 | 2/27/20 | Marker | Ewing | Z.C. | 25 | 1/27/20 | Internal applicant; better qualified |
| 6) | Director of Food and Nutrition Services | Willingboro, NJ | 389863 | 4/16/20 | 5/28/20 | Lepore | Blair | C.O. | 29 | 4/15/20 | Client referral; better qualified |
| 7) | Patient Services Manager | Camden, NJ | 389849 | 4/17/20 | 4/23/20 | Lepore | Bland-Campbell | J.I. | 35 | 5/13/20 | Internal applicant |
| 8) | Patient Services Manager | Willingboro, NJ | 389864 | 4/17/20 | 4/26/20 | Lepore | Blair | N.P. | 56 | 5/13/20 | Internal applicant; better qualified |
| 9) | Retail Manager | Vineland, NJ | 389715 | 5/18/20 | 6/11/20 | Lepore | Hymerling | B.L. | 29 | 5/12/20 | Internal applicant |
| 10) | Director of Food and Nutrition Services | Willingboro, NJ | 438863 | 12/7/20 | 12/14/20 | Lepore | Blair | S.C. | 37 | 12/14/20 | Internal applicant |

---

[4] Information for this table is taken from plaintiff's Statement of Disputed Material Facts.   (*See generally id.* ¶¶ 40–244.)

## **LEGAL STANDARD**

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it will "affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a "reasonable jury could return a verdict for the nonmoving party." *Id.* The movant bears the burden of showing the absence of any "genuine issues of material fact." *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1080 (3d Cir. 1996) (citations omitted). The party may satisfy its burden by "produc[ing] evidence showing the absence of a genuine issue of material fact" or "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the movant makes this showing, the nonmovant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmovant must "point to concrete evidence in the record that supports each and every essential element of his case." *Orsatti v. N.J. State Police*, 71 F.3d 480, 484 (3d Cir. 1995).

"When opposing summary judgment, the nonmovant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'" *Corliss v. Varner*, 247 F. App'x 353, 354 (3d Cir. 2007) (quoting *Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2002)). The Court's role is not to weigh the evidence and decide the truth, but to determine if there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In making that decision, "[a]ll facts and inferences are construed in the light most favorable to the non-moving party," *Boyle v. Cty. of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998), and credibility

determinations are for the fact finder.    *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

**DISCUSSION**

## I.    EXHAUSTION UNDER THE PFPO

I will first address whether Gaglardi's claim under the Philadelphia Fair Practices Ordinance is properly before this Court.    Defendants argue that summary judgment on Gagliardi's claim under the Philadelphia Fair Practices Ordinance (PFPO) should be granted because Gagliardi did not exhaust her administrative remedies.    (Def.'s Br. p.31; Reply Br. pp.10–12.)    In support of this argument, defendants cite *Lee v. Bay, LLC*, Civ. No. 21-5088, 2023 WL 1971209 (E.D. Pa. Feb. 13, 2023), in which a plaintiff bringing a similar PFPO claim filed an administrative complaint with the Pennsylvania Human Relations Commission but not the Philadelphia Commission on Human Relations (PCHR).    *Id.* at *3.    The district court interpreted the PFPO to require that a plaintiff file a complaint with the PCHR before filing a lawsuit and accordingly granted summary judgment for defendants.    *Id.* at *3–4. Defendants argue that the same result is compelled here, where Gagliardi filed an administrative complaint with the EEOC but not the PCHR.    (Def.'s Br. p.31.)

I disagree and conclude that Gagliardi's filing an administrative complaint with the EEOC is sufficient to meet the exhaustion requirements under the PFPO.    As Gagliardi points out, *Lee* is not the only district court case to speak on this issue.    (Opp'n Br. p.10, 11.)    She cites *Higgins v. MetLife Inc.*, 687 F. Supp. 3d 644 (E.D. Pa. 2023), decided more recently than *Lee*, in which the court held that filing a complaint with the EEOC is sufficient to satisfy administrative exhaustion under the PFPO.    *Id.* at 656.    The *Higgins* court acknowledged that "[t]here are two competing lines of cases on this issue," but after a lengthy analysis concluded that the contested language in the PFPO is

"a pragmatic measure to prevent dual and redundant proceedings" rather than a mechanism to force complainants to choose between seeking relief under the PFPO versus state or federal antidiscrimination laws. *Id.* at 651, 654–55. I agree with this reasoning. Furthermore, I agree with the rationale in *Higgins* that a contrary interpretation would be inconsistent with the "broad, remedial purpose behind the PFPO," *id.* at 654, which is to "assure that all persons regardless of [various protected categories, including age] enjoy the full benefits of citizenship and are afforded equal opportunities for employment[.]" Phila. Code §9–1101(1)(e).

Accordingly, I will proceed to assess the merits of the PFPO claim along with her other claims.

## II. *MCDONNELL DOUGLAS* BURDEN SHIFTING FRAMEWORK

Because Gagliardi relies on circumstantial rather than direct evidence of discriminatory animus to support her claims, the burden-shifting framework established by *McDonnell Douglas*, 411 U.S. 792, applies to each of her ADEA, NJLAD, and PFPO claims at the summary judgment stage. *Smith v. City of Allentown*, 589 F.3d 684, 689–90 (3d Cir. 2009) (applying the *McDonnell Douglas* framework to ADEA claims); *Monaco v. Am. Gen. Assur. Co.*, 359 F.3d 296, 300 (3d Cir. 2004) (applying the *McDonnell Douglas* framework to ADEA and NJLAD claims); *Smith v. Thomas Jefferson Univ.*, Civ. No. 05-2834, 2006 WL 1887984, at *3 (E.D. Pa. June 29, 2006) (same for PFPO claims).[5]

The *McDonnell Douglas* framework proceeds in three steps. First, a plaintiff must present a *prima facie* case establishing that: "(1) she was over 40 at the time she applied for the position in question; (2) she was qualified for the

---

[5] One difference between the ADEA and the NJLAD is that protection against age discrimination in the ADEA is "limited to individuals who are at least 40 years of age," 29 U.S.C. §631(a), whereas the NJLAD does not limit its protections to persons at least 40 years of age. *Monaco*, 359 F.3d 296, 300 (3d Cir. 2004). That distinction is not relevant here, where Gagliardi is older than 40.

position in question; (3) despite her qualifications she was rejected; and (4) the employer ultimately filled the position with someone sufficiently younger to permit an inference of age discrimination." *Narin v. Lower Merion Sch. Dist.*, 206 F.3d 323, 331 (3d Cir. 2000). In the alternative, a plaintiff can establish the fourth element by showing that after her rejection, the employer "continued to seek applicants from among those having plaintiff's qualifications." *Fowle v. C & C Cola*, 868 F.2d 59, 61 (3d Cir. 1989). Establishing the *prima facie* case "is not intended to be onerous. The *prima facie* case merely 'raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors.'" *Sempier v. Johnson & Higgins*, 45 F.3d 724, 728–29 (3d Cir. 1995) (citation omitted) (quoting *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 577 (1978)).

Once the plaintiff has successfully established a *prima facie* case creating an inference of discrimination, the burden at the second step shifts to the employer who must "articulate a legitimate nondiscriminatory reason for the adverse employment action." *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 412 (3d Cir.1999) (citation omitted). This step "does not require that the employer prove that the articulated legitimate, nondiscriminatory reason was the actual reason for the adverse employment action. Instead, the employer must provide evidence that will allow the factfinder to determine that the decision was made for nondiscriminatory reasons." *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 644 (3d Cir. 2015) (citing *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994)). This step places a "relatively light burden" on the employer. *Fuentes*, 32 F.3d at 763.

Third and finally, if the employer is successful at step two, the burden of production rebounds to the plaintiff "to provide evidence from which a factfinder could reasonably infer that the employer's proffered justification is merely a

pretext for discrimination." *Burton v. Teleflex Inc.*, 707 F.3d 417, 426 (3d Cir. 2013).   The plaintiff must make this showing to defeat a motion for summary judgment.   *Id.*   At all times throughout the *McDonnell Douglas* framework, "the burden of persuasion rests with the plaintiff."   *Smith*, 589 F.3d at 690.

## A.   <u>Prima Facie Case</u>

Defendants do not dispute that Gagliardi can establish the first three elements of her *prima facie* case.[6]   Defendants do, however, argue that Gagliardi cannot establish a prerequisite to her *prima facie* case.   Defendants assert that Gagliardi's *prima facie* case fails, as a general matter, because there is no evidence that the people responsible for hiring her knew her age.   (Def.'s Br. pp. 11–15; Reply Br. pp. 3–7.)[7]   In addition, defendants argue that Gagliardi cannot establish the fourth element in connection to the Patient Services Manager, Willingboro position because the person hired was not sufficiently younger than Gagliardi to raise an inference of age discrimination. (Def.'s Br. pp. 29–30; Reply Br. p. 10.)   I find that both of defendants' arguments fail.

---

[6] Defendants dedicate a portion of their brief to arguing that Gagliardi was not qualified for one of the positions to which she applied, thus failing to establish the second element of her *prima facie* case with respect to that position.   (Def.'s Br. p. 30.) In her briefing, however, Gagliardi states that she is no longer pursuing her claim in connection to that position.   (Pl.'s SDMF ¶ 39 n.7 (referring to the Patient Services Systems, Philadelphia position with requisition ID 395214).)

[7] Defendants suggest that whether an employer has knowledge of a plaintiff's status as a protected class member falls within an analysis of the fourth element of the *prima facie* case.   (Def.'s Br. pp. 11, 15.)   The Third Circuit itself has not always been clear on where consideration of that question belongs.   *Compare Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797–99 (3d Cir. 2003) (appearing to analyze employer's knowledge as part of the fourth element), *with Harris v. Dow Chem. Co.*, 586 F. App'x 843, 846 (3d Cir. 2014) (referring to employer's knowledge as "a prerequisite to [the] *prima facie* case").   I opt here to treat the knowledge requirement as a prerequisite to the *prima facie* case.

### 1.   Whether Sufficient Evidence Exists that Employer Knew Gagliardi's Age

As defendants correctly point out, Third Circuit precedent precludes a plaintiff from proving an inference of age discrimination if the employer is unaware of the plaintiff's age.  (*See* Def.'s Br. p.11.)  In support of this proposition, defendants rely primarily on *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789 (3d Cir. 2003).   In *Sarullo*, a fired postal employee brought a claim of age discrimination based on the fact that the United States Postal Service had hired nine younger employees since his termination.   *Id.* at 799.   Uncontroverted testimony, however, established that the person authorized to decide if the plaintiff should be reinstated did not know the plaintiff's age.   *Id.* Accordingly, the Third Circuit held that "[a]bsent knowledge of [plaintiff's] age, [the employer's] decision not to reinstate him does not raise an inference of age discrimination."   *Id.*[8]

Defendants also point to *Harris v. Dow Chem. Co.*, Civ. No. 12-3713, 2013 WL 6037069 (E.D. Pa. Nov. 13, 2013), *aff'd*, 586 F. App'x 843 (3d Cir. 2014), in which the district court reached a similar result.   In *Harris*, in which the plaintiff sued for race and age discrimination over the employer's decision not to hire her, the undisputed evidence showed that the hiring manager was not aware of her age and the plaintiff's resume did not disclose her age.   *Id.* at *4. Although the plaintiff's work history had begun as early as 1972, she listed prior work experience on her resume beginning only in 1992.   *Id.* at *1.   The Court

---

[8] Other cases echo this general proposition.   *See, e.g.*, *Geraci v. Moody-Tottrup, Int'l, Inc.*, 82 F.3d 578, 581 (3d Cir. 1996) ("[I]t is counter-intuitive to infer that the employer discriminated on the basis of a condition of which it was wholly ignorant."); *Felix v. Albert Einstein Healthcare Network*, Civ. No. 09-3750, 2012 WL 525893, at *5 (E.D. Pa. Feb. 17, 2012) ("It is logically impossible for an employer to discriminate against a job applicant on either of these bases [race or age] if the employer is unaware of the applicant's race or age.").

held that "[s]ince it is undisputed that [the hiring manager] did not know plaintiff's race or age at the time she decided not to hire plaintiff, plaintiff has failed, as a matter of law, to produce evidence that would raise an inference of discriminatory action." *Id*. at *4.[9]

Defendants assert that the logic of *Sarullo* and *Harris* mandates the same result here. (Def.'s Br. pp. 12, 13.) All four recruiters who reviewed applications for the positions Gagliardi applied for stated in depositions that they did not know Gagliardi's age. (Def.'s SUMF ¶¶ 159, 167, 177, 180.) Despite the fact that Gagliardi's resume showed that she earned her degree in 1980 and had been in the workforce since 1981, recruiters Christina Stewart and Melissa Lepore further testified that they did not try to "ballpark" Gagliardi's age based on those dates. (*Id*. ¶¶ 160, 178.) Defendants also note that Gagliardi did not proceed to the interview stage for any of the positions, precluding the possibility that a recruiter could have guessed her age from her appearance. (Def.'s Br. p. 13.) "Thus, *Sarullo* and its progeny require dismissal here," defendants argue. (*Id*.)

Gagliardi, of course, rejects defendants' position, arguing that she has put forth sufficient circumstantial evidence to at least create a factual dispute as to defendants' knowledge of her age. (Opp'n Br. pp. 5–7.) Based on the dates in her resume, Gagliardi argues, "even a cursory review of [p]laintiff's resumes could easily inform a reader—especially a recruiting professional whose entire job is to consider job applicant resumes—of her approximate age." (*Id*. p. 5.) After all, Gagliardi points out, each recruiter testified that she was

---

[9] The Third Circuit upheld this ruling on appeal. "Failing to dispute, let alone disprove, [the hiring manager's] testimony that she was unaware of Harris's race or age when she declined to interview her, Harris effectively conceded she could not satisfy a prerequisite to her *prima facie* case, that the circumstances under which Dow did not hire her 'raise an inference of discriminatory action.'" *Harris*, 586 F. App'x at 846 (footnote omitted).

intellectually capable of estimating a candidate's age based on the dates in their resume, even if each recruiter denied doing so in Gagliardi's case.   (Pl.'s SDMF ¶¶ 49, 50, 72, 113, 115, 130, 153, 176, 199, 236.)   Gagliardi also cites to a district court decision finding that plaintiffs could demonstrate an employer's knowledge of their approximate ages based on dates in their resumes.   *Floyd v. Merck & Co.*, Civ. No. 18-3912, 2020 WL 1640083, at *4 (E.D. Pa. Apr. 2, 2020).   In reaching that outcome, the *Floyd* court reasoned:

> The Court must view the evidence presented and draw all reasonable inferences in the light most favorable to the non-moving party.   Here, even a brief examination of the plaintiffs' resumes could easily inform a reader—especially a reader whose job it is to evaluate job candidates—of their approximate ages.   For example, Mr. Rosanova's resume shows that he has been in the workforce since 1977.   Likewise, Mr. Floyd's resume shows that he entered the workforce in 1976.   The reasonable inference drawn from this information being provided to Merck is that Merck had knowledge of the plaintiffs' approximate ages.   Because all reasonable inferences must be made in favor of the plaintiffs at [the summary judgment] stage, the Court finds that the plaintiffs have managed to meet their burden to show that Merck was at least aware of their status as protected class members.

*Id*.

I find that Gagliardi has put forth sufficient evidence to at least raise a factual dispute as to defendants' knowledge of her age.   The facts here are distinguishable from those of *Sarullo* and *Harris*.   In *Sarullo*, the plaintiff altogether failed to counter testimony that his employer did not know his age. 352 F.3d at 799.   In *Harris*, the plaintiff truncated the work history on her resume by some 20 years.   2013 WL 6037069, at *1.   Here, Gagliardi's resume listed both the year she obtained her associate's degree, 1980, and the full date range of her work history, which began in 1981.   (Pl.'s SDMF ¶ 42.)   It is common knowledge that students rarely graduate from a two-year college program before they are roughly 20 years old.   From that fact, Gagliardi's age

15

would be exceedingly easy to estimate based on her resume.   As the *Floyd* court noted, all facts and inferences at the summary judgment stage are construed in the light most favorable to the non-moving party, *Boyle*, 139 F.3d at 393, and credibility determinations are for the fact finder.   *Big Apple BMW, Inc.*, 974 F.2d at 1363.   Further, the Court is cognizant that establishing the *prima facie* case "is not intended to be onerous."   *Sempier*, 45 F.3d at 728.   Here, Gagliardi has pointed to concrete evidence in the record—her resume, (ECF No. 57-8, Ex. E)—that stands in tension with the recruiters' testimony that they did not calculate her age based off her resume.   This is enough to create a genuine dispute as to the material fact of whether defendants knew her age.[10]

Accordingly, summary judgment is not appropriate on the grounds that Gagliardi failed to establish the prerequisite to her *prima facie* case that defendants were aware of her age.

### 2. Whether Hired Candidate Was Sufficiently Younger to Create Inference of Age Discrimination

Defendants separately argue that Gagliardi cannot satisfy the fourth element of her *prima face* case as to the Patient Services Manager, Willingboro position because the person hired was not sufficiently younger than Gagliardi to raise an inference of age discrimination.   (Def.'s Br. pp. 29, 30; Reply Br. p. 10.)[11]   Gagliardi was 60 at the time she applied for the position.   (Pl.'s SDMF ¶ 192.)   The candidate ultimately hired, N.P., was 56—younger by 3 years and 11 months.   (*Id.* ¶ 203; Def.'s SUMF ¶ 75; Opp'n Br. p. 7.)

---

[10] Another point raised by defendants—that the experience a candidate lists on a resume is distinct from her age—is not persuasive when applied to the facts of this case.   (*See* Def.'s Br. p. 14.)

[11] The requisition ID for this position is 389864.

Defendants may be correct on this point, but they overlook the alternative avenue available to Gagliardi to establish the fourth element of her *prima facie* case. That element can be established if plaintiff can show that "the employer ultimately filled the position with someone sufficiently younger to permit an inference of age discrimination," *Narin*, 206 F.3d at 331, *or* that the position remained open and the employer "continued to seek applicants from among those having plaintiff's qualifications." *Fowle*, 868 F.2d at 61. Here, the undisputed evidence is that Gagliardi applied for the Patient Services Manager, Willingboro position on April 17, 2020, and was rejected on April 26, 2020. (Pl.'s SDMF ¶¶ 191, 197.) N.P., the successful candidate, did not apply until May 4, 2020. (*Id.* ¶ 202.) Defendants do not argue that Gagliardi was not qualified for this position. (ECF No. 62 ¶ 196.) Therefore, she has established the fourth element of her *prima facie* case with respect to this position.

With Gagliardi having made out a *prima facie* case of age discrimination as to all ten positions for which she seeks relief, I now proceed to step two of the *McDonnell Douglas* framework.

### B. Legitimate Non-Discriminatory Reasons

Defendants can articulate legitimate nondiscriminatory reasons for not hiring plaintiff that easily satisfy their "relatively light burden" of production at the second step of the *McDonnell Douglas* framework. *See Fuentes*, 32 F.3d at 763. In fact, defendants provide four such reasons: (1) they preferred hiring internal candidates, which did not include Gagliardi, (Def.'s SUMF ¶ 4); (2) they preferred candidates referred by a client, which did not include Gagliardi, (Pl.'s SDMF ¶¶ 163, 168, 169); (3) the candidate they hired for each position was better qualified than Gagliardi, (*id.* ¶¶ 54, 83, 105, 123, 146, 168, 209); and (4) Blair did not have a positive view of Gagliardi's candidacy because their prior experience working together. (*Id.* ¶ 158.) Defendants satisfy their burden at step two, so I move onto step three.

17

###### C.   Pretext

At the third step of the *McDonnell Douglas* framework, plaintiff must show that the legitimate nondiscriminatory reasons articulated by defendants are a mere pretext for discrimination.   *Burton*, 707 F.3d at 426.   Otherwise, plaintiff cannot defeat defendants' motion for summary judgment.

To meet this burden, Gagliardi must point to evidence "that could cause a jury 'either to (1) disbelieve the employer's articulated legitimate reasons, or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.'"   *Fowler v. AT&T, Inc.*, 19 F.4th 292, 299 (3d Cir. 2021) (quoting *Walton v. Mental Health Ass'n. of Se. Pennsylvania*, 168 F.3d 661, 668 (3d Cir. 1999) (internal alterations omitted)).   Under the first method of proving pretext—undermining the credibility of defendants' justification—plaintiff's evidence "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence.'"   *Fuentes*, 32 F.3d at 765 (quoting *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 531 (3d Cir. 1992)).   This standard "places a difficult burden on the plaintiff," which "arises from an inherent tension between the goal of all discrimination law and our society's commitment to free decisionmaking by the private sector in economic affairs."   *Id.* (internal quotation marks and citation omitted.)   Under either method of proving pretext, Gagliardi must show that "but for the protected characteristic, [she] would have been hired."   *Id.* at 764.

Gagliardi is unable to make a showing of pretext through either method. Simply put, she points to no record evidence—other than her own speculation— that meaningfully calls into question defendants' proffered nondiscriminatory reasons for declining to hire her.   Plaintiff offers little to undermine the credibility of the first, second, or fourth reasons.   Regarding defendants'

18

preference to hire internal candidates, plaintiff admits that defendants have a policy of giving preference to internal candidates.   (ECF No. 59-1 ¶ 4.)[12]   Next, defendants' preference to hire candidates recommended by a client  applies only to C.O.[13]   Defendants point to record evidence establishing that C.O. worked for Morrison's client before the client contracted the position to Morrison, and the client specifically requested that C.O. continue to work in the role as an employee of Morrison.   (Def.'s SUMF ¶¶ 130, 131.)   Plaintiff does not contest these assertions.   (ECF No. 59-1 ¶¶ 130, 131.)   Regarding the fourth reason, plaintiff characterizes Mr. Blair's testimony that he did not know her age as "self-serving," (*id*. ¶¶ 184, 185), but plaintiff does not show that Blair's negative perception of her candidacy is inconsistent with any of his past statements or reviews of her work.

Plaintiff also fails to undermine the credibility of defendants' third reason for not hiring her—that the other candidates were better qualified than plaintiff.   The matter of qualifications is really the crux of plaintiff's case. When asked during her deposition whether she had "any evidence or basis to claim that anyone at Compass treated [her] differently because of [her] age," plaintiff responded: "All the applications that I completed and I didn't hear anything back.   Why, somebody with my experience, why would they not call me?   I don't know.   So the only conclusion I could come to is it was my age." (Gagliardi   Dep.   240:9–240:16.)   This   response,   however,   concedes   the weakness   of   her   case.   Plaintiff's   strongest   basis   for   claiming   age

---

[12] Blair testified that this policy was an even greater focus during the Covid-19 pandemic "because several thousand internal candidates were furloughed."   (Pl.'s SDMF ¶ 182.)

[13] Another candidate hired instead of plaintiff, N.P., worked for a Compass Group subsidiary that shut down due to the Covid-19 pandemic roughly two months before N.P applied for the position at Morrison.   (*See* Def.'s SUMF ¶¶ 77–79; Pl.'s SDMF ¶ 205.)   Melissa Lepore, the recruiter for the position, testified that N.P. was viewed as an internal candidate.   (Pl.'s SDMF ¶ 210.)

discrimination is her disbelief that she did not receive a response to her applications despite her decades of experience in the industry.

Although the I am sympathetic to Gagliardi's frustration, her disbelief does not create a genuine issue of material fact that can overcome summary judgment. *See Dungee v. Ne. Foods, Inc.*, 940 F. Supp. 682, 689 (D.N.J. 1996) ("It is the perception of the decisionmaker that is relevant, not the plaintiff's perception of herself. The plaintiff's subjective belief that she was more qualified for the job does not create an issue of fact for the jury.") (citations omitted). It is not sufficient for Gagliardi to show that defendants' judgment as to her relative qualifications were wrong or mistaken. *See Fuentes*, 32 F.3d at 765. Rather, "the factual dispute at issue is whether discriminatory animus motivated the employer." *Id.* As plaintiff herself admits, she does not have evidence of age discrimination other than her own perception of her qualifications. This is simply not enough to overcome summary judgment. *See Vuong v. Mgmt. of J.C. Penney's Co.*, 169 F. App'x 675, 677 (3d Cir. 2006) (affirming grant of summary judgment to employer on ADEA claim where the plaintiff failed "to present anything more than broad accusations" and provided "no evidence in the form of affidavits, depositions, or otherwise" to effectively rebut the defendant's legitimate, non-discriminatory reasons).

Plaintiff offers two final retorts, both of which fail. First, she argues that pretext can be inferred from the fact that for many of the positions, "the recruiter determined that [p]laintiff was qualified to receive an interview, yet rejected [p]laintiff for the position, and could not explain why." (Opp'n Br. p. 10.) Plaintiff refers to the testimony of several recruiters that, upon review of her applications several years after the events giving rise this lawsuit, her applications appeared strong enough to have deserved to be forwarded to the hiring manager for further review. (Pl.'s SDMF ¶¶ 46–52, 70–75, 133–138, 154–159, 178–181, 196–198, 217–219, 233–235.) I am not persuaded,

however, that this testimony amounts to sufficient evidence of "inconsistencies … in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence.'"  *Fuentes*, 32 F.3d at 765 (quoting *Ezold*, 983 F.2d at 531).   The recruiters' review of plaintiff's applications occurred during depositions taken roughly three years after the events in question.[14]   To defendants' point, the recruiters did not testify that they believed *when they first received plaintiff's applications* that she should have received an interview.   (Reply Br. p. 8 n.2.)   In fact, they testified that they had no basis to doubt defendants' proffered reasons for not hiring plaintiff, including that other candidates were more qualified.   (Def.'s SUMF ¶¶ 154, 156, 158, 162, 164, 166, 173, 175, 176.)

Notably, the recruiters' after-the-fact review did not involve a comparison of plaintiff's applications to those of the candidates who were hired. Defendants dedicate a substantial portion of their motion brief to conducting such a comparison and showing how the recruiters could have reasonably concluded *in the moment* that the individuals they hired were better suited for the positions.   (*See* Def.'s Br. pp. 16–24.)   Some job postings, for example, stated a preference for qualifications that plaintiff did not have, such as a bachelor's degree or certified dietary manager certificate.   (*See, e.g.*, Def.'s SUMF ¶¶ 41, 43, 99, 114.)   At most, therefore, the recruiters' after-the-fact review of plaintiff's application suggests that defendants' initial judgment about plaintiff's qualifications was wrong or mistaken—not that discriminatory animus motivated defendants.   *See Fuentes*, 32 F.3d at 765.   No reasonable jury could find that this testimony is sufficient to rebut defendants' nondiscriminatory reasons for declining to hire plaintiff.

---

[14] The recruiters' depositions were taken on July 14, 2023 (ECF No. 57-11. Ex. H, Graham Dep.); July 27, 2023 (ECF No. 57-13, Ex. J, Marker Dep.); and July 28, 2023 (ECF No. 57-10, Ex. G, Lepore Dep.; ECF No. 57-12, Ex. I, Stewart Dep.).

Second, plaintiff claims that discriminatory animus can be inferred from the fact that she was rejected from three positions before the successful candidate had even applied.  (Opp'n Br. p.10.)  These actions by defendants, however, are entirely consistent with their stated preference for internal applicants.  The three positions at issue are those for Patient Services Manager, Camden (Req. ID 389849); Patient Services Manager, Willingboro (Req. ID 389864); and Director of Food and Nutrition Services, Willingboro (Req. ID 438863).  (Pl.'s SDMF ¶¶180, 183, 197, 202, 237; Def.'s SUMF ¶134.)[15]  The candidate ultimately hired for each of the positions was not only an internal applicant, but also was hired in the depths of the Covid-19 pandemic, when defendants were placing an even greater emphasis on in-house hiring because thousands of employees had been furloughed.  (*See* Pl.'s SDMF ¶182.)  Moreover, Blair was the hiring manager for two of the positions.  (*Id.* ¶¶194, 231).  As discussed, Blair testified that he would not have hired plaintiff for another position after previously requesting her termination based on his perception of her performance—in other words, for a reason unrelated to plaintiff's age.  (*Id.* ¶32.)  Therefore, that plaintiff was rejected from three positions before the successful candidate had even applied does little to bolster her case.

In sum, Gagliardi is unable to make a showing of pretext.  She does not point to evidence that could cause a jury to "disbelieve the employer's articulated legitimate reasons." *Fowler*, 19 F.4th at 299.  Likewise, the meager evidence she has mustered could not cause a jury to "believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."  *Id.*

---

[15] Plaintiff appears to misstate the date she applied for the Director of Food and Nutrition Services, Willingboro position.  The correct date appears to be December 7, 2020.  (Def.'s SUMF ¶134.)

Because Gagliardi fails to carry her burden at the third step of the *McDonnell Douglas* framework, summary judgment for defendants is appropriate on all of Gagliardi's claims.   *See Burton*, 707 F.3d at 426.

## <u>CONCLUSION</u>

For the reasons stated above, defendants' Motion for Summary Judgment (ECF No. 57) is **GRANTED**.   An appropriate Order accompanies this Opinion.

/s/ Edward S. Kiel
**EDWARD S. KIEL**
UNITED STATES DISTRICT JUDGE

Dated: July 10, 2024